UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RENWICK HOSPITALITY GROUP LLC, | | |
| | Plaintiff, | 25-CV-3049 (RA) |
| v. | | OPINION & ORDER |
| LULLA'S NYC LLC, | | |
| | Defendant. | |

RONNIE ABRAMS, United States District Judge:

In this trademark infringement action, Plaintiff Renwick Hospitality Group LLC asserts that Defendant LULLA'S NYC LLC infringed Plaintiff's trademark "LULLA," and committed various New York State common law and statutory violations, including unfair competition and unjust enrichment. Defendant has failed to appear in this action. Plaintiff now moves, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a default judgment against Defendant, seeking monetary damages and a permanent injunction barring Defendant's use of the name "LULLA'S." For the reasons stated herein, Plaintiff's motion is denied.

## BACKGROUND

The Court draws the following facts from the Complaint and Plaintiff's declarations in support of its motion for default judgment. Plaintiff is a hospitality company that operates restaurants and bars including the business at issue in this Complaint—LULLA, an Italian restaurant located at 113 West 24th Street in Manhattan, New York. Dkt. No. 1 ("Compl.") ¶ 3. LULLA opened its doors on August 10, 2023 and Plaintiff maintains that it has "continuously used the LULLA trademark in connection with restaurant and bar services since that date." *Id.* ¶ 12. Defendant, LULLA'S NYC LLC, is a limited liability entity that owns and operates a Venezuelan restaurant and bakery called LULLA'S, located at 169 Graham Avenue in Brooklyn, New York. *Id.* ¶ 8. Beyond the similarity between the names of the two restaurants, Plaintiff points to additional overlaps, namely the color schemes of the logos and

websites, the website domains and handles for each business's social media profile, as well as the menus themselves, contending that "[l]ike Plaintiff's menu, Defendant's menu is robust and has plenty of variety." Compl. ¶¶ 22–24.[1]

Believing that Defendant infringed its trademark, in early 2025, Plaintiff sent two separate cease and desist letters to its owner, Ivo Diaz. *Id.* ¶ 46; Dkt. No. 26 ("Wallach Decl.") ¶¶ 8, 11; Dkt. No. 25 ("First Lieberman Decl."), Ex. 7 ("Cease and Desists"). Mr. Diaz eventually responded, stating that his restaurant was named after his daughter, Lulla, with the double-L partially inspired by the word "hallelujah." He also noted that his company, along with his restaurant bearing the contested name, its branding, and its lease agreement were established "well before 2023." First Lieberman Decl., Ex. 8 ("Email to Ivo Diaz") at 4–5. Plaintiff initiated this lawsuit on April 13, 2025, asserting five causes of action: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) common law trademark infringement under N.Y. Gen. Bus. Law § 360-o; (3) common law unfair competition; (4) deceptive practices pursuant to N.Y. Gen. Bus. Law § 349; and (5) unjust enrichment.

On April 24, 2025, a summons was issued to Defendant, who was served on May 5, 2025 via the Secretary of State. Defendant never answered or appeared. Plaintiff obtained a certificate of default on June 3, 2025 and this Court then issued an order requiring Defendant to show cause as to why a default judgment should not be entered in Plaintiff's favor. A copy of the order to show cause and supporting papers were served on Defendant on June 26, 2025. Plaintiff thereafter filed the instant motion for default judgment. Dkt. No. 24 ("Def. Mot."). The Court held two brief video conferences, at which only Plaintiff appeared. Following the first conference, the Court ordered Plaintiff to file a supplementary brief, which it did on September 12, 2025. Dkt. No. 31 ("Second Lieberman Decl.").

---

[1] The Court takes judicial notice of these websites and profiles. *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."); *see also System1 Rsch. Ltd. v. System1 LLC*, 2022 WL 4585735, at *1 n.3 (S.D.N.Y. Sept. 29, 2022).

Defendant failed to appear at any point during the litigation. The Court nonetheless denies Plaintiff's motion in its entirety.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a court may—on a plaintiff's motion—enter a default judgment against a defendant who "has failed to plead or otherwise defend" itself in an action brought against it. Fed. R. Civ. P. 55(a). The Court may "enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).[2] Generally speaking, "a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Yet because a party in default does not admit conclusions of law, the Court must determine whether those allegations establish a sound legal basis for liability. *See Jemine v. Dennis,* 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

## DISCUSSION

The Court now considers whether, accepting as true all well-pleaded allegations in the Complaint, Plaintiff has established its claims under the Lanham Act and state law. For the reasons that follow, the Court finds that it has not.

### I.  Lanham Act Claim – Unfair Competition

Section 43 of the Lanham Act, codified at 15 U.S.C. § 1125(a), "protects registered marks against the use of any word, term, name, symbol, or device likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

activities by another person." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 144 (S.D.N.Y. 2022) (citing 15 U.S.C. § 1125(a)). To prevail on an unfair competition claim, a plaintiff must show that: (1) it has a valid mark that is entitled to protection, and (2) "the defendant's actions are likely to cause confusion as to the origin or sponsorship of the defendant's goods." *Id.* at 144. Courts treat these claims identically to trademark infringement claims pursuant to 15 U.S.C. § 1114. *See Brennan's, Inc. v. Brennan's Rest., LLC,* 360 F.3d 125, 129–30 (2d Cir. 2004) (stating that the aforementioned test "applies to infringement claims brought under §§ 1114 and 1125(a)"). Plaintiff's first cause of action alleges that Defendant engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) by using Plaintiff's trademark "LULLA" as the name of its business. Compl. ¶¶ 28–41.

### A.  Ownership of Protectable Mark

To succeed on its Lanham Act claim, Plaintiff must first establish that it has a valid mark entitled to protection. *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). Plaintiff has a valid registration for its mark, *see* Wallach Decl. ¶ 5; First Lieberman Decl., Ex. 6, so this requirement has been met.

### B.  Likelihood of Consumer Confusion

Once a plaintiff has shown that it owns a valid mark, it must then show that Defendant's actions are likely to cause confusion. The Court is guided by the balancing test established in *Polaroid Corporation v. Polarad Electronics Corporation*, 287 F.2d 492 (2d Cir. 1961), in which the Second Circuit set forth eight nonexclusive factors to be considered in deciding whether a likelihood of confusion exists: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity of the products within the market place; (4) the likelihood plaintiff will bridge the gap between the products; (5) evidence of actual confusion among consumers; (6) the sophistication of the relevant consumer population; (7) the defendant's good or bad faith; and (8) the relative quality of the products. *Id.* at

495. The inquiry is not merely that "the party with the greatest number of factors weighing in its favor wins," but a determination "on the ultimate question of whether consumers are likely to be confused." *Wonderful Co. v. Nut Cravings Inc.*, 2025 WL 212064, at *2 (2d Cir. Jan. 16, 2026) (citing *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)).

The Court concludes that the majority of the *Polaroid* factors favor Defendant, and that potential restaurant patrons are unlikely to be confused as to which business is which. Accordingly, even accepting all its allegations as true, Plaintiff has failed to sufficiently allege likelihood of confusion, and the Court denies its motion.

### 1. Strength of Mark

The first *Polaroid* factor, the strength of the plaintiff's mark, tilts in favor of Plaintiff. The Second Circuit has "set forth four categories to gauge the extent to which a mark indicates a source of goods or services: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful." *Sports Auth., Inc.*, 89 F.3d at 961. Generic marks are typically "not entitled to protection under the Lanham Act, while arbitrary marks will most certainly be seen as strong marks." *Id.* Proper names are typically classified as descriptive since they do not "by [themselves] identify a product." *Brennan's, Inc.*, 360 F.3d 125 at 131. Descriptive marks, including names, "can be protected only if [they] ha[ve] acquired secondary meaning." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995); *see also Brennan's Inc.*, 360 F.3d at 131. Acquired distinctiveness "looks solely to that recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services." *Brennan's Inc.*, 360 F.3d at 130–31.

"LULLA" is best characterized as a proper name, and as such is descriptive. Although Plaintiff has not proffered that its mark has acquired secondary meaning, it was registered and thus "its distinctiveness is presumed." In other words, "registration creates a rebuttable presumption that a

descriptive mark enjoys secondary meaning." *Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 379 (S.D.N.Y. 2015). The strength-of-mark factor favors Plaintiff.

### 2. Degree of Similarity

The second *Polaroid* factor, which examines the similarity of the marks, also favors Plaintiff, albeit only slightly. When considering this factor, courts look to two key questions: 1) whether "the similarity of the marks is likely to cause confusion among ordinarily prudent consumers," *Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co.*, 2016 WL 3162118, at *3 (S.D.N.Y. June 2, 2016), and 2) "what effect the similarity has upon prospective purchasers." *Sports Auth., Inc.*, 89 F.3d at 962. The question is not whether a consumer would be confused when comparing the products side by side in the marketplace, but "whether [differences] are likely to be memorable enough to dispel confusion on serial viewing." *See Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006). Thus, a proper analysis should consider, not just the product's name, but the "sizes, logos, typefaces, and package designs" to determine whether the "overall impression in the relevant market context would lead consumers to believe that the junior user's product emanates from the same source as products bearing the senior user's mark." *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011).

First, the names of the restaurants—LULLA and LULLA'S—are virtually identical. They are separated only by an "'s" in Defendant's name, which should be given relatively little weight, as courts have found that differences in punctuation do not change the impression of a mark. *See TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 101 (2d Cir. 2001) (finding it of "little or no significance" that the domain names were "different only in that the separate words are . . . without . . . spaces or punctuation, and the resulting word is followed by . . . '.com,' or '.net'").

In addition to the restaurants' names, there are other similarities. First, the marks and the websites use a similar pink and green color scheme. *See* Compl. ¶ 21–23. The shade of green used on

Plaintiff's website and Defendant's mark appear almost identical, although the shades of pink are distinct. *Id.* ¶ 22. Plaintiff also points out the similarity between the two website domain names—www.lullanyc.com (Plaintiff) and www.lullasnyc.com (Defendant), which like the mark itself, differ only by one letter, and both use the city identifier 'nyc.' *Id.* ¶ 23. The Instagram handles—@lullanyc (Plaintiff) and @lullabrooklyn (Defendant)—likewise both begin with "@lulla," which is followed by "nyc" or "brooklyn" respectively. *Id.* The Court appreciates Plaintiff's legitimate concern that these similarities could lead to a possibility of tagging errors on social media, as well as initial confusion on search platforms as to whether the restaurants are the same or somehow related. *See* Second Lieberman Decl. ¶ 9-12; *see also e.g.*, *JC Hosp. v. Hochberg*, 703 F. Supp. 3d 448, 456, 458 (S.D.N.Y. 2023) (similarity of social media handles).[3]

Still, despite these likenesses, there are key differences in the parties' logos, websites, and social media profiles. First, the logos use very different typefaces. Plaintiff's logo is pink, all capitalized, and uses a chunky, whimsical typeface. Moreover, there are three animated drawings—of a wine glass, a grape bunch, and a plate topped with a napkin and cutlery—that overlay the logo on the



www.lullanyc.com; (last accessed on 04/10/2025)



www.lullasnyc.com; (last accessed on 04/10/2025)

---

[3] Plaintiff has made clear that it is not "claiming particular trade dress," and is instead focused on "Defendant's blat[a]nt trademark infringement and unfair competition." Second Lieberman Decl. ¶ 13; *see also Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 592 (S.D.N.Y. 2007), *aff'd*, 454 F.3d 108, 117 (2d Cir. 2006); *see also 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 249 n.6 (2d Cir. 2024) ("To the extent 1-800 also alleges that Warby Parker committed trademark infringement by copying the "look and feel" of 1-800's website, that is really a trade dress claim.").

website. *See* Compl. ¶ 22. By contrast, Defendant's logo is green, all lower case, and uses a thin elegant typeface. *Id.*

Plaintiff maintains that this difference should have little import in the Court's analysis. *See* Second Lieberman Decl. ¶ 5. But courts have found that the visual impact of a logo is not to be underestimated, even when the marks themselves are otherwise similar. As the court in *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC* stated: "[T]he typewritten and aural similarity of the marks . . . does not necessarily make the marks similar for purposes of assessing confusion under a *Polaroid* analysis." 335 F. Supp. 3d 566, 584 (S.D.N.Y. 2018). Rather, "differences in typeface, font and general presentation may lead to a finding that two marks are substantially different in use." *Id.* Finding the difference in typefaces, coloring, and the use of a swirl in the logo dispositive, the court concluded that "[t]his presentation creates a vastly different impression on the viewer, making confusion unlikely." *Id.* at 585. Furthermore, although it's true that the parties' website domain names, and social media handles are similar, the websites themselves are visually and substantively quite distinct, as are the Instagram profiles. For example, Plaintiff's Instagram profile describes LULLA as "Italian Inspired, New York Spirited Since 2023." By contrast, Defendant's profile describes LULLA'S as "Lulla's Grand Café: Venezuelan Grand Café & Bakery. Brunch, Coffee, Cocktails." It even identifies its sister restaurant as @casaoranyc. On balance, given the similarity in names, website domain names, and social media handles, the Court concludes that this factor weighs in favor of Plaintiff, though ever so slightly.

### 3. Proximity

The third *Polaroid* factor—geographic and marketplace proximity—favors Defendant. Under this factor, courts "consider whether the two products compete with each other." *Sports Auth., Inc.*, 89 F.3d at 963. When assessing this factor, courts consider "whether the products serve the same purpose and whether they share similar geographic distribution, market position and audience appeal." *Capri*

*Sun GmbH*, 595 F. Supp. 3d at 168 (citing *La Cibeles, Inc. v. Adipar, Ltd.*, 2000 WL 1253240, at *7 (S.D.N.Y. Sept. 1, 2000)). Although Plaintiff and Defendant both operate restaurants in New York City, a closer look reveals the extent of the daylight between their target markets. First, with respect to geographic proximity, the restaurants are only 5.5 miles away from each other, *see* Second Lieberman Decl. ¶ 8, but nonetheless "operate in distinct geographic service areas," such that consumers "are unlikely to be confused by [D]efendant's continued use of the name." *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 555 (E.D.N.Y. 2019) ("Although the parties engage in the same area of commerce, *i.e.*, the operation of a restaurant serving halal food, they operate in distinct geographic service[] areas sufficiently distant from one another such that consumers are unlikely to be confused by defendant[']s continued use of the name 'Addy's BBQ' in connection with its operation of the Elmont restaurant."). While a similar distance may be considered proximate in a suburban or rural setting, in New York City, a separation of over five miles and across two boroughs reduces the likelihood that consumers will be confused, or that the same consumers even would frequent both businesses. Without more, mere proximity is insufficient to shift this factor in favor of Plaintiff. Second, with respect to marketplace proximity, the menu offerings at each restaurant are substantially different. Though Plaintiff endeavors to downplay the differences between the offerings, stating that "[l]ike Plaintiff's menu, Defendant's menu is robust and has plenty of variety beyond merely bakery items," Compl. ¶ 24, Plaintiff's restaurant appears to be an Italian bistro with an extensive dinner menu, while Defendant's restaurant is a Venezuelan all-day eatery with a focus on sandwiches and baked goods.

Given the differences described above, although there may be some overlap between the businesses' customer bases, that overlap is likely moderate at best. *See La Cibeles, Inc.*, 2000 WL 1253240, at *8. Plaintiff's restaurant offers a sit-down Italian dining experience in Chelsea, while Defendant's restaurant and café offers a more casual all-day Venezuelan bakery and small plates experience in East Williamsburg, Brooklyn. The former closes at midnight, while the latter, which

9

does not serve dinner, closes at 5 p.m. At bottom, the businesses serve different foods in different neighborhoods in different boroughs, and customers can easily distinguish them.

### 4. Bridging the Gap

The fourth *Polaroid* factor—bridging the gap—requires courts to "examine[] whether the prior user [Plaintiff] may wish to enter the defendant's market in the future." *Wonderful Co.*, 2025 WL 212064, at *3; *see also Brennan's, Inc. v. Brennan's Rest., LLC.*, 2003 WL 1338681, at *4 (S.D.N.Y. Mar. 18, 2003), *aff'd sub nom. Brennan's, Inc.*, 360 F.3d 125. Plaintiff has not alleged that it plans to bridge the gap between the parties' commercial offerings by, for example, opening a restaurant or bakery that serves Venezuelan cuisine or any business in Brooklyn. Thus, this factor also weighs in favor of Defendant.

### 5. Actual Confusion

The fifth *Polaroid* factor, evidence of actual confusion, weighs in favor of Defendant as well. Although Plaintiff maintains that confusion may result from Defendant's use of the name "LULLA'S," it has not alleged any instances of actual confusion. *See e.g.*, Compl. ¶¶ 23, 27, 31, 47–48; Second Lieberman Decl. ¶¶ 9–11 ("[P]latform algorithms increasingly cross-reference the two venues, causing one business to surface while reading about the other," which "results in a tangible risk of review misattribution, star rating dilution, and erroneous customer feedback"). While this is not fatal to Plaintiff's case, since "actual confusion need not be shown," *Balady, Inc. v. Elhindi*, 2014 WL 7342867, at *8 (E.D.N.Y. Dec. 23, 2014) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)), "[w]ithout any direct evidence," this factor weighs in Defendant's favor. *Id.*

### 6. Bad Faith

The sixth *Polaroid* factor concerns "whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any confusion between his and the senior

10

user's product." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482–83 (2d Cir. 1996). There are no allegations that Defendant infringed the trademark in bad faith. Defendant claims to have begun using the mark at least two years prior to Plaintiff's restaurant opening, *see* Email to Ivo Diaz at 4, and stated that "[g]iven this timeline, [LULLA'S is] unsure how you came across a name that had already been in use by us." *Id.* The Court finds no indication that Defendant intended to capitalize on Plaintiff's goodwill, and therefore concludes that this factor too weighs in favor of Defendant.

### 7.  Quality of Defendant's Products

The seventh *Polaroid* factor—the relative quality of the products—considers whether the senior user's reputation could be "tarnished by [the] inferior merchandise of the junior user." *Cadbury Beverages, Inc.*, 73 F.3d at 483. Plaintiff does not suggest that Defendant's "products and services are inferior to those provided at" Plaintiff's restaurant, "nor that [Pl]aintiff's reputation could be jeopardized by the quality of [D]efendant[']s products and services." *Addy's BBQ,* 419 F. Supp. 3d at 556. Further, it is unlikely that the quality of Defendant's products, even if inferior, would affect the reputation of the quality of Plaintiff's products given the differences in their cuisine. *See Brennan's, Inc.*, 2003 WL 1338681, at *5 ("[T]he different cuisines offered by the respective restaurants [are] quite likely to counterbalance any tendency toward confusion" between the products and their respective quality). This factor weighs in favor of Defendant.

### 8.  Sophistication of Consumers

Finally, the eighth *Polaroid* factor—the sophistication of the relevant consumer population—also favors Defendant. This factor "recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchasers." *Cadbury Beverages, Inc.*, 73 F.3d at 480 (citing *Arrow Fastener Co., Inc*, 59 F.3d at 399). In *Brennan's Inc. v. Brennan's Restaurant, LLC*, the court noted that "the New York City restaurant patrons prepared to pay the sort of prices charged in both of the restaurants involved in this case are largely sophisticated, and many of

them will, no doubt, have acquaintance with the very substantial media coverage received by restaurants and well known chefs in New York City, which is likely to prevent confusion, or, if there is incipient confusion, quickly disabuse it." 2003 WL 1338681, at *5. The same holds true here. Plaintiff does not allege that its customers or Defendant's customers are unsophisticated and unable to distinguish between the two businesses, and as such, this factor weighs in favor of Defendant.

### C. Balancing of *Polaroid* Factors

In sum, six of the eight *Polaroid* factors favor Defendant, while only two favor Plaintiff. Critically, on the ultimate question of whether a consumer is likely to be confused, the Court finds that Plaintiff has not plausibly alleged that Defendant uses its mark in a manner that is likely to do so. Plaintiff has therefore not met its burden of demonstrating a claim of unfair competition pursuant to 15 U.S.C. § 1125(a) of the Lanham Act. *See Wonderful Co.*, 2025 WL 212064, at *2.

## II. State Law Claims

In addition to its federal trademark infringement claim, Plaintiff brings four claims pursuant to New York State law for: (1) common law trademark infringement; (2) common law unfair competition; (3) deceptive practices; and (4) unjust enrichment. These claims also fail.

### A. Common Law Trademark Infringement

Trademark infringement claims brought under N.Y. Gen. Bus. Law § 360-o "mirror . . . Lanham Act claims." *Capri Sun*, 595 F. Supp. 3d at 145. Having found that Plaintiff has failed to establish a claim of unfair competition and trademark infringement under the Lanham Act, the Court likewise finds that Plaintiff has not plausibly alleged the same claim under New York State law. *See* Compl. ¶¶ 42–53.

### B. Unfair Competition

Plaintiff's unfair competition claim also fails. Unlike unfair competition claims under federal law, "[a] plaintiff bringing an unfair competition claim under New York common law must couple its

evidence supporting liability under the Lanham Act with additional evidence demonstrating [the defendant's] bad faith." *Capri Sun*, 595 F. Supp. 3d at 145. Plaintiff, however, has failed to allege the required elements and its unfair competition claim cannot stand. *See* Compl. ¶¶ 54–62.

### C.  Deceptive Business Practices

Plaintiff's deceptive business practices claim pursuant to N.Y. Gen. Bus. Law § 349(a) falls short as well. *See* Compl. ¶¶ 63–70. New York law prohibits "[d]eceptive acts or practices in the conduct of any trade or commerce or in the furnishing of any service." *See Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997). "The standard for whether an act or practice is misleading is objective, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct." *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005). Conduct only rises to the level of materially misleading if it affects consumers' choice of, or conduct regarding, a product. *See Bildstein v. MasterCard Int'l Inc.,* 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).

Courts in this Circuit have construed the requisite injury to sustain a claim of deceptive business practices brought by corporate competitors to be a "harm to the public at large." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016) (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). Section 349 is "modelled after the Federal Trade Commission Act," and as such, "federal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety." *Sports Traveler, Inc.*, 1997 WL 137443, at *2–3. Here, "[a]lthough Plaintiff . . . claims that the alleged infringement has created [potential] consumer confusion, the complaint is devoid of allegations supporting an inference that the public's health or safety is at stake as a result of the alleged infringement." *Id.* at 3. Thus, Plaintiff's third state law claim also fails.

### D. Unjust Enrichment

Finally, Plaintiff alleges unjust enrichment. *See* Compl. ¶¶ 71–75. To state a claim of unjust enrichment under New York Law, a plaintiff must allege: "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by [the p]laintiff." *Kenyatta v. Combs*, 2025 WL 2636610, at *7–8 (S.D.N.Y. Sept. 12, 2025). Plaintiff asserts that "Defendant should not be entitled to retain and benefit from the value of the time, effort, and money [Plaintiff] has invested into developing the goodwill and brand recognition associated with the LULLA trademark." Compl. ¶ 73. Unjust enrichment claims are "not available where [they] simply duplicate[], or replace[] . . . a conventional contract or tort claim." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *8 (S.D.N.Y. Mar. 27, 2019); *see also Int'l Council of Shopping Ctrs., Inc. v. Info Quarters, LLC*, 2019 WL 2004029, at *4 (S.D.N.Y. May 7, 2019). As a result, "courts in this [C]ircuit frequently dismiss unjust enrichment claims brought in Lanham Act cases." *Id.* (collecting cases); *see also Allstar Mktg. Grp., LLC v. Bigbigdream320*, 2020 WL 5836514, at *4 (S.D.N.Y. Sept. 30, 2020). Plaintiff has not alleged circumstances here that warrant this equitable remedy. Accordingly, entry of default judgment for Plaintiff's unjust enrichment claim is denied.

### III. Injunctive Relief

In addition to seeking default judgment, Plaintiff also asks the Court to grant a permanent injunction, preventing Defendant "from using the name LULLA'S in commerce in the State of New York in connection with its restaurant services." Compl. ¶ 6; First Lieberman Decl. ¶ 31. Plaintiff is not entitled to injunctive relief. Courts in this Circuit have held that a party seeking a permanent injunction must demonstrate "(1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020); *see also U.S. Polo*

14

*Ass'n, Inc.*, 800 F. Supp. 2d at 540. Here, Plaintiff fails to show that it even suffered an irreparable injury and is thus not entitled to injunctive relief.

## CONCLUSION

Although Defendant has not appeared in spite of the Court's order, the Court is bound to apply the applicable legal standard on a motion for default judgment. Having done so, it must deny Plaintiff's motion.

The Second Circuit has advised that district courts should permit plaintiffs to amend a complaint with "the benefit of a ruling" on its adequacy, so that they may "weigh the practicality and possible means of curing specific deficiencies," if no proper grounds for denial of leave to amend have been identified. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015). Although the Court is skeptical that any amendment would not be futile, to the extent Plaintiff seeks to file an amended complaint, it shall file a motion to seek leave to do so within thirty (30) days of the filing of this Opinion & Order.

The Clerk of Court is respectfully directed to close the motion pending at Docket Number 24.

SO ORDERED.

Dated:      March 31, 2026
            New York, New York

_____
Ronnie Abrams
United States District Judge

15